UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Brianca Fountain, Willie Loyd, and Todd Gardner, on behalf of themselves and all others similarly situated, | Case No. 14-cv-3475 (PAM/BRT) |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| Oasis Legal Finance, LLC, | |
| Defendant. | |

_____

This matter is before the Court on Oasis's Motion to Dismiss. For the reasons that follow, the Court grants the Motion.

**BACKGROUND**

The factual allegations at the core of this case raise a legal doctrine with ancient and medieval roots: champerty. Champerty, and its companion doctrine of maintenance, describe an agreement between a nonparty to a lawsuit and a litigant, under which the nonparty finances the litigant's prosecution of the lawsuit in exchange for a portion of the lawsuit's proceeds if the litigant is successful. Johnson v. Wright, 682 N.W.2d 671, 675 (Minn. App. 2004). Because champertous contracts encourage vexatious and speculative litigation and discourage the settlement of pending litigation, they have been void as against public policy in Minnesota for more than a century and are therefore unenforceable. Id.; Huber v. Johnson, 70 N.W. 806, 807-08 (Minn. 1897).

According to Plaintiffs, Oasis Legal Finance, LLC is an Illinois company that buys legal-funding interests in personal-injury lawsuits through non-recourse "purchase

agreements" with Minnesota consumers who have suffered injuries and have brought suit in state or federal court. (Am. Compl. (Docket No. 15) ¶ 28.) If the consumer succeeds in prosecuting the lawsuit (by either prevailing or settling), he or she pays Oasis the purchase price, which is based on the lawsuit's estimated value, plus a substantial premium and servicing fees. (Id. ¶¶ 29, 32-33.) But if the consumer does not succeed, he or she pays Oasis nothing. (Id. ¶¶ 30-31.) Oasis advertises the purchase agreements throughout Minnesota. (Id. ¶ 33.)

Oasis entered into purchase agreements with Brianca Fountain and Willie Loyd. Under the terms of the agreement with Fountain, the purchase price for her lawsuit was $620. (Id. ¶ 38.) The applicable premium then depends on the length of time Fountain continues to litigate: if she settles her lawsuit within days of signing the agreement, she would have to pay Oasis $930 (a 50% increase from the purchase price); if she settles her lawsuit in one year, Oasis would claim a total $1,395 (a 225% increase); and if she settles her lawsuit in two years, she would have to pay Oasis $2,015 (a 325% increase). (Id. ¶¶ 39-41.) The agreement also tacks on fees, including a case-servicing fee of $35 every six months. (Id. ¶ 42.) Fountain has not yet settled or otherwise resolved her lawsuit. (Id. ¶ 44.) The terms of the two agreements with Loyd, one having a purchase price of $3,184 and the other of $594, are similar. (Id. ¶¶ 45-56.) Loyd settled his lawsuit and paid Oasis $6,393.70 (a 60% increase) as a result. (Id. ¶¶ 57-58.)

In addition to those substantive terms, the purchase agreements contain two provisions relevant here. The agreements include a forum-selection clause that requires any lawsuit to be brought in state court in Cook County, Illinois:

> The Parties hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the Circuit Court of Cook County, Illinois for any disputes, claims or other proceedings arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, and agree not to commence any such lawsuit, dispute, claim or other proceeding except in the Circuit Court of Cook County, Illinois. The parties hereby irrevocably and unconditionally waive any objection to the laying of venue of any lawsuit, dispute, claim or other proceeding arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, in the Circuit Court of Cook County, Illinois, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in the Circuit Court of Cook County, Illinois that any such lawsuit, dispute, claim or other proceeding brought in the Circuit Court of Cook County, Illinois has been brought in an inconvenient forum.

(Lawler Decl. (Docket No. 21) Exs. 1-2, ¶ 8.6.) And the agreements have a choice-of-law provision that selects Minnesota law. (Am. Compl. ¶ 43.)

Along with the purchase agreements, Oasis has the consumer's initial and substitute lawyers sign an "attorney acknowledgment" attached to an "irrevocable letter of direction." (Id. ¶ 113.) The attorney acknowledgment purportedly limits and influences the lawyers' representation and directs how to handle requests for payment of their clients' money from Oasis. (Id.) Todd Gardner is one such lawyer, and he represents Fountain in her lawsuit. (Id. ¶ 16.)

Fountain and Loyd initially brought a putative class action in Minnesota state court, alleging that the purchase agreements constitute champerty. (Compl. (Docket No. 1, Ex. 1).) The proposed class encompasses Minnesota consumers who have entered into purchase agreements with Oasis. (Id. ¶ 72.) Fountain and Loyd asserted claims for a declaratory judgment that the agreements violate Minnesota public policy, are void, and cannot be enforced; unjust enrichment and constructive trust; violation of Minnesota's

3

usury laws; illegal commitments for gambling; and violation of Minnesota's Deceptive Trade Practices Act. (Id. ¶¶ 85-136.) They sought repayment of all principal, fees, and money Oasis received under the agreements; and an injunction against Oasis from collecting any additional funds and entering into further purchase agreements. (Id.)

Oasis removed the case to federal court and moved to dismiss based on the forum-selection clause in the purchase agreements. (Notice of Removal (Docket No. 1); Mot. to Dismiss (Docket No. 5).) Fountain and Loyd then amended their complaint to add Gardner, who asserted a putative class action alleging that the purchase agreements interfere with the attorney-client relationship. (Am. Compl. ¶¶ 113-20.) That proposed class encompasses Minnesota lawyers with clients who have entered into purchase agreements with Oasis. (Id. ¶ 124.) Gardner asserted claims for a declaratory judgment of his legal and ethical rights and obligations under the agreements and a violation of the Deceptive Trade Practices Act. (Id. ¶¶ 178-202.) It is undisputed that Gardner is not a party to the purchase agreements and is not subject to the forum-selection clause within them. (Id. ¶¶ 114, 116.)

Oasis now moves to dismiss Fountain and Loyd's claims based on the forum-selection clause and Gardner's claims for lack of subject-matter jurisdiction.

**DISCUSSION**

As Oasis's challenge to Gardner's claims is jurisdictional, the Court will address his claims first and then turn to Fountain and Loyd's claims.

**A.     Gardner's Claims**

Oasis seeks dismissal of Gardner's claims under Rule 12(b)(1) for lack of subject-matter jurisdiction on two grounds: Gardner does not have standing to assert his claims because no actual case or controversy exists between him and Oasis; and the Court does not have diversity jurisdiction over the claims because no amount in controversy could establish that jurisdiction.  The Court will dismiss Gardner's claims on the ground that he lacks standing.

Under Article III of the United States Constitution, federal courts may adjudicate only actual cases and controversies.  DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006).  An "essential and unchanging part of the case-or-controversy requirement" is that a party has standing to invoke federal jurisdiction.  Id. (citation and quotation marks omitted).  Thus, a party seeking to invoke federal jurisdiction must strictly comply with the constitutional-standing doctrine.  Delorme v. United States, 354 F.3d 810, 815 (8th Cir. 2004).

To satisfy constitutional standing, a plaintiff bears the burden of showing three things: (1) he has suffered injury in fact that is concrete, particularized, and actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the disputed conduct so that the injury is fairly traceable to the defendant's conduct; and (3) it is likely and not merely speculative that the injury will be redressed by a favorable decision.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

Oasis argues that Gardner does not have constitutional standing primarily because he has not suffered any injury in fact.  In making that argument, Oasis emphasizes that

neither the relevant documents nor other applicable laws create any obligations for Gardner here. Oasis initially highlights the relief Gardner requests of the Court: provide "direction and declarations about [his] obligations pursuant to the Oasis 'purchase agreements' at issue here." (Am. Compl. ¶ 118.) As Gardner is not a party to the purchase agreement, Oasis reasons, he cannot have any obligations under the agreement.

Oasis also points to the document that Gardner actually signed: the attorney acknowledgment. In particular, the attorney acknowledgment recognizes receipt of a copy of the purchase agreement and the irrevocable letter of direction. (Lawler Decl. Ex. 3.) The irrevocable letter of direction is signed by Fountain and addressed to Gardner, advising him that she "sold and assigned a portion of the proceeds of [her] legal claim" to Oasis and that, if he receives a check for the proceeds, he must "deposit [the] check into [his] trust account and pay" Oasis the apportioned amount "before releasing any funds to" her. (Id.) In turn, the attorney acknowledgment states that Gardner "will honor [Fountain's] irrevocable letter of direction and assignment" and "agree[s] that all disbursements of funds, including [her] share of proceeds, will be through [his] trust account." (Id.) Oasis admits, somewhat remarkably, that the acknowledgment is not binding because it lacks consideration. If the acknowledgment does not obligate Gardner to do anything, Oasis furthers, he cannot have sustained an injury.

Gardner counters that he has standing because the Minnesota Rules of Professional Conduct obligate him to bring the claims he asserts. Specifically, Gardner references Rule 1.15, which governs Minnesota lawyers' handling of client funds. Comment 4 to that rule discusses the circumstance when "third parties may have lawful

6

claims against specific funds or other property in a lawyer's custody" and says that lawyers "may have a duty under applicable law to protect such third-party claims against wrongful interference by the client" and "may file an action to have a court resolve the dispute." Given that a dispute between Fountain and Oasis about the proceeds from the lawsuit exists, Gardner continues, he must pursue the Court's intervention.[1]

In the Court's view, Gardner has not suffered an injury in fact in several respects. He has failed to identify any actual harm that he himself has endured due to the purchase agreement, rather only alleging that his client Fountain has been wronged and deserves monetary damages. He has failed to designate any imminent harm that he might endure due to the attorney acknowledgment. Instead, he offers only conjecture: Fountain may soon settle or prevail in her lawsuit (which she may never do) and thereby trigger some potential duty he owes under the acknowledgment to transfer a portion of the proceeds to Oasis. And he has failed to explain how the Minnesota Rules of Professional Responsibility can convey constitutional standing on a party in federal court. Even if Minnesota's professional rules could generate standing, the rule Gardner relies on does not in fact obligate him to litigate a money dispute between Fountain and Oasis. Rule 1.15, comment 4 applies when the lawyer has "specific funds" in his "custody" and indicates that the lawyer "may"—not "must"—bring an action to resolve the dispute.

---

[1] Gardner also contends that he has suffered an injury in fact based on his Deceptive Trade Practices Act claim, namely that he wants to stop Oasis from falsely advertising the legality of its purchase agreements to lawyers. An attorney learned in the law cannot claim he or she is deceived by an advertisement that says a particular contractual arrangement is lawful—especially when, according to Gardner, the arrangement is plainly unlawful.

Gardner does not have the proceeds from the lawsuit in his trust account because those proceeds do not yet exist. Nor, were they to exist, would Gardner be required to litigate who is entitled to them.

Ultimately, Gardner is asking for advice on his ethical obligations as a lawyer in a hypothetical circumstance. But this Court does not have the power to give that advice. See Pub. Water Supply Dist. No. 8 of Clay Cnty., Mo. v. City of Kearney, Mo., 401 F.3d 930, 932 (8th Cir. 2005) (reiterating that Article III prohibits federal courts from issuing advisory opinions). The Court will therefore dismiss Gardner's claims for lack of standing. If Gardner needs guidance on how his obligations under the professional rules affect any potential duty he has under the purchase agreement or attorney acknowledgment, he should contact the Minnesota Lawyers Professional Responsibility Board.

**B.     Fountain and Loyd's Claims**

Oasis seeks dismissal of Fountain and Loyd's claims under either Rule 12(b)(6) or the forum non conveniens doctrine based on the forum-selection clause in the purchase agreements that chooses Cook County, Illinois as the exclusive forum. The Court will dismiss these claims under the forum non conveniens doctrine.

Because Oasis pursues enforcement of the forum-selection clause under two alternative procedural vehicles—Rule 12(b)(6) and the forum non conveniens doctrine—the Court must determine under which vehicle it should resolve this issue. The Supreme Court recently addressed the procedure to enforce a forum-selection clause that opts for another federal venue in Atlantic Marine Construction Co. v. U.S. District Court for

Western District of Texas, 134 S. Ct. 568 (2013).  The Supreme Court held that the clause could be enforced not by a motion to dismiss under 28 U.S.C. § 1406(a) or Rule 12(b)(3), but instead by a motion to transfer under 28 U.S.C. § 1404(a).  Id. at 577-80.  As part of its analysis, the Supreme Court briefly discussed the proper basis to enforce a forum-selection clause that chooses a nonfederal venue and reiterated that the clause could be enforced under the forum non conveniens doctrine.  Id. at 579-80.  In doing so, however, the Supreme Court saved for another day the question of whether the clause could also be enforced under Rule 12(b)(6).  Id. at 580.  The Eighth Circuit has also declined to take a position on the viability of Rule 12(b)(6) as an enforcement mechanism for a forum-selection clause.  See Rainforest Cafe, Inc. v. EklecCo, LLC, 340 F.3d 544, 545 n.5 (8th Cir. 2003).  Given that the Supreme Court has affirmatively endorsed the forum non conveniens doctrine as a vehicle to enforce a forum-selection clause that chooses a nonfederal forum, the Court will apply that doctrine here.

The parties do not quarrel over the applicability of the forum-selection clause to Fountain and Loyd's claims or the mandatory nature of the clause.  Rather, they dispute first whether the clause is valid and enforceable, and then whether the clause should be enforced.  The Court will address each dispute in turn.

**1.     Is the Forum-Selection Clause Enforceable?**

Neither the Supreme Court nor the Eighth Circuit has decided whether state or federal law governs the enforceability of a forum-selection clause.  Yet considering that Minnesota and federal law look to essentially the same factors and the parties rely on federal law in their arguments, the Court will apply federal law.  See Servewell

Plumbing, LLC v. Fed. Ins. Co., 439 F.3d 786, 789 (8th Cir. 2006) (applying federal law where the state law followed the federal standard and the parties did not argue that the application of one law over the other would be dispositive).  Under federal law, forum-selection clauses "are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching." M.B. Rests., Inc. v. CKE Rests., Inc., 183 F.3d 750, 752 (8th Cir. 1999) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972)).

Fountain and Loyd argue that the forum-selection clause is unenforceable for five reasons.  Each reason, however, has been consistently rejected by federal courts across the country.

First, Fountain and Loyd contend that because the forum-selection clause is included in the purchase agreement, which allegedly constitutes champerty and thus is void ab initio and unenforceable, the forum-selection clause is unenforceable as well. But numerous courts—including the Eleventh Circuit in a case examining and enforcing the same forum-selection clause in an Oasis purchase agreement that is at issue here—have addressed the validity of a forum-selection clause before determining the validity of a contract as a whole.  See Rucker v. Oasis Legal Fin., LLC, 632 F.3d 1231, 1237-38 (11th Cir. 2011) (treating the forum-selection clause as a severable part of the contract and analyzing its validity separately); see also Muzumdar v. Wellness Int'l Network, Ltd., 438 F.3d 759, 762 (7th Cir. 2006) (reasoning that the court must decide whether it is the proper court to decide the validity of the contract before it decides the validity of the contract).  This Court will do the same.

Second, Fountain and Loyd contend that enforcing the forum-selection clause would contravene Minnesota public policy against champerty. Yet here, what matters is not whether the contract as a whole violates public policy, but whether the forum-selection clause itself violates public policy. Courts in this District have repeatedly held that enforcement of a forum-selection clause does not violate Minnesota public policy. See, e.g., Brenner v. Nat'l Outdoor Leadership Sch., 20 F. Supp. 3d 709, 717 (D. Minn. 2014) (Doty, J.). And Fountain and Loyd's additional concern that a judgment against Oasis issued in Illinois would have no effect in Minnesota has no merit. See U.S. Const. art. IV, § 1 (Full Faith and Credit Clause).

Third, Fountain and Loyd contend that they would be deprived of their day in court if forced to litigate in Illinois. They insist that the cost of travel to and from court appearances, hotel and meal expenses, and similar costs related to a foreign adjudication would render it economically impossible for them to litigate their claims there. Economic hardship, however, does not create enough inconvenience to avoid a forum-selection clause—in large measure because the parties would have considered any potential inconvenience in agreeing to the forum-selection clause. See Servewell Plumbing, 439 F.3d 786, 790 & n.6 (8th Cir. 2006). And Fountain and Loyd have simply not pleaded enough facts to plausibly show that they would be deprived of their day in court if they had to file this lawsuit in Illinois. Compare McDonnell Douglas Corp. v. Islamic Republic of Iran, 758 F.2d 341, 345-46 (8th Cir. 1985) (excusing enforcement of a forum-selection clause requiring litigation in Iran because of chaotic post-revolutionary conditions there), with M.B. Rests., 183 F.3d at 753 (upholding enforcement of a forum-

selection clause requiring litigation in Utah despite plaintiff's objection that he could not afford to litigate there).

Fourth, Fountain and Loyd contend that the forum-selection clause was procured by fraud. Again, however, the only nonconclusory allegations in the Complaint as to fraud go to the contract as a whole. Fountain and Loyd must allege that the forum-selection clause itself was procured by fraud, and that they have not done so with any particularity. (See, Am. Compl. ¶ 112 ("Through the actions described in this First Amended Complaint, Oasis did in fact fraudulently induce Plaintiffs Fountain and Loyd, and those similarly situated, to enter into the purported venue selection and anti-aggregation clauses contained in the illegal 'purchase agreements.'")

Finally, Fountain and Loyd contend that the forum-selection clause is part of a contract of adhesion. Adhesion contracts are

> imposed on the public for necessary service on a "take it or leave it" basis. Even though a contract is on a printed form and offered on a "take it or leave it" basis, those facts alone do not cause it to be an adhesion contract. There must be a showing that the parties were greatly disparate in bargaining power, that there was no opportunity for negotiation and that the services could not be obtained elsewhere.

Schlobohm v. Spa Petite, Inc., 326 N.W.2d 920, 924-25 (Minn. 1982) (emphases in original). Though Fountain and Loyd have alleged that there was a great disparity in bargaining power between them and Oasis, they were in dire financial need, and they were unable to negotiate the terms of the purchase agreements (see Am. Compl. ¶¶ 91-94, 97)—though in less-than-plausible detail—they have not alleged with any support that

the agreements were necessary or that they were not free to turn down the agreements and obtain financial assistance elsewhere.

In addition to those five reasons, Fountain and Loyd contend that the forum-selection clause cannot be enforced because Gardner's claims are inextricably intertwined with their claims and having to litigate their claims in a separate proceeding in Illinois state court would be inefficient and could lead to inconsistent rulings. This concern is moot, however, as Gardner lacks standing and his claims will be dismissed.

### 2. Should the Forum-Selection Clause Be Enforced?

Having concluded that the forum-selection clause is contractually valid, the Court will next consider whether to enforce it under the forum non conveniens doctrine. The Supreme Court recently clarified the analysis for enforcement of a forum-selection clause through a § 1404(a) transfer motion: "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex., 134 S. Ct. 568, 581 (2013). In conducting that analysis, the Supreme Court elaborated, the Court must place the burden of proof on the plaintiff to show that the forum-selection clause should not be enforced, give "no weight" to the plaintiff's choice of forum, and not consider the parties' private interests. Id. at 581-82. The Supreme Court directed that this same analysis for a motion to enforce a forum-selection clause under § 1404(a) applies equally to the same motion under the forum non conveniens doctrine. Id. at 580, 583 n.8.

The Court must therefore evaluate any public-interest factors that would constitute extraordinary circumstances that weigh against enforcing the forum-selection clause. Public-interest factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981) (citation and quotation marks omitted).

The public-interest factors favor dismissing this case under the forum non conveniens doctrine. The parties do not dispute the varied case loads and potential for congestion between this District and the courts in Cook County, Illinois. Instead, they argue about whether a Court in Minnesota has a localized interest in applying Minnesota's prohibition against champerty to the purchase agreements at issue here. Fountain and Loyd contend that approximately 2,000 consumers in the putative class are located in Minnesota and deserve a chance to vindicate their rights in Minnesota based on Minnesota law. Oasis counters that the purchase agreements contain a choice-of-law provision that requires the application of Minnesota law and its strong interest in prohibiting champerty, regardless of which court decides the case. In the end, it is likely that an Illinois court applying Illinois choice-of-law principles would enforce the choice-of-law provision and analyze Fountain and Loyd's claims under Minnesota law. Enforcement of the forum-selection clause would therefore not thwart Minnesota public policy against champerty, diminishing any benefit to the public in keeping this case in this District.

Fountain and Loyd have failed to establish that there are any extraordinary circumstances weighing against enforcement of the forum-selection clause. Thus, the Court dismisses Fountain and Loyd's claims under the forum non conveniens doctrine.

**CONCLUSION**

The Court lacks subject-matter jurisdiction over Gardner's claims because he does not have standing. And the forum-selection clause prevents the Court from hearing Fountain and Loyd's claims. Those claims must be brought in Cook County, Illinois. Accordingly, **IT IS HEREBY ORDERED** that:

1. Oasis's Motion to Dismiss (Docket No. 18) is **GRANTED**; and

2. The Amended Complaint (Docket No. 15) is **DISMISSED** without prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: February 5, 2015              *s/ Paul A. Magnuson*
                                     Paul A. Magnuson
                                     United States District Court Judge